WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amelia R. Reichley,<br><br>  Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>  Defendant. | No. CV-15-00572-PHX-ESW<br><br>**ORDER** |

Pending before the Court is Amelia R. Reichley's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her applications for disability insurance benefits. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction. (Doc. 10).

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 16, 20, 25), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

# I. LEGAL STANDARDS

## A. Disability Analysis: Five-Step Evaluation

The Social Security Act provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To be eligible for benefits, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. § 404.1520(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

> **Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 404.1520(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

> **Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 404.1520(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id*.

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it

---

[2] *Parra*, 481 F.3d at 746.

is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court also considers the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff, who was born in 1974, has been employed as a medical biller. (A.R. 62, 68). In 2012, Plaintiff filed an application for disability insurance benefits. (A.R. 152-53). Plaintiff's application alleged that on April 1, 2010, she became unable to work due to the following conditions: fibromyalgia, lupus, diabetes with vision impairments, and Epstein-Barr virus. (A.R. 68). Social Security denied the applications in December 2012. (A.R. 93-95). In November 2013, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of benefits. (A.R. 100-01). Plaintiff sought further review by an ALJ, who conducted a hearing in October 2014. (A.R. 36-66). At the hearing, Plaintiff stated that she amended the alleged disability onset date to February 1, 2013. (A.R. 46). In his November 20, 2014 decision, the ALJ found that Plaintiff has not been under a disability from February 1, 2013 through the date of the decision. (A.R. 18-29).

Plaintiff appealed the ALJ's ruling. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security

Commissioner. (A.R. 3-8). On March 30, 2015, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 1, 2013, the amended alleged disability onset date. (A.R. 20). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: (i) fibromyalgia; (ii) diabetes mellitus; (iii) systemic lupus erythematosus with Epstein-Barr virus/herpes; (iv) methicillin resistant staphyloccus aureus ("MRSA") with abscesses; and (v) obesity. (A.R. 21). This determination is unchallenged.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 22). Neither party disputes the ALJ's determination at this step.

#### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff has retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff should never climb ladders, ropes, and scaffolds. The ALJ found that Plaintiff can frequently climb ramps and stairs, crouch, kneel, and crawl. (A.R. 23). Based on the testimony of a vocational expert ("VE") and Plaintiff's RFC, the ALJ determined at Step Four that Plaintiff can perform her past relevant work as a medical biller. (A.R. 28).

Plaintiff challenges the ALJ's RFC and Step Four determinations. Plaintiff argues that the ALJ committed harmful error in assessing Plaintiff's RFC by (i) improperly

rejecting Plaintiff's testimony regarding her symptoms and (ii) improperly rejecting the opinions of Plaintiff's primary care physician and physician's assistant. (Doc. 16 at 5).

### 5. Step Five: Capacity to Perform Other Work

The ALJ's analysis did not proceed to the fifth step as the ALJ found at Step Four that Plaintiff is not disabled.

### C. Plaintiff's Challenge to the ALJ's RFC Assessment and Step Four Determination

#### 1. The ALJ Did Not Improperly Weigh Plaintiff's Credibility

When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The plaintiff does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a plaintiff must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first step, and there is no evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition,

although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *See* 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).

Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding her subjective symptoms. As detailed below, the Court finds that the ALJ has provided clear and convincing reasons for discounting Plaintiff's testimony.

### i. Lack of Objective Evidence

The ALJ noted that there is a lack of objective evidence in the record that supports Plaintiff's claimed limitations and stated that the "[l]ack of evidence does not work towards [Plaintiff's] favor." (A.R. 24). Plaintiff challenges this finding by citing to a number of medical records documenting Plaintiff's diagnoses, such as abnormal blood tests. However, the cited records do not describe the severity of Plaintiff's symptoms or how the symptoms limit Plaintiff's ability to work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981). Contrary to Plaintiff's assertion, the ALJ did not unreasonably find that there is a lack of objective evidence in the record supporting Plaintiff's claimed limitations.

Further, the ALJ did not rely solely on the lack of supporting medical evidence in making his credibility determination. As discussed below, the ALJ gave other clear and convincing reasons to discount Plaintiff's credibility concerning the severity and limiting effects of her pain. Thus, the ALJ properly considered the lack of objective medical evidence supporting Plaintiff's claimed limitations as one of the factors in weighing Plaintiff's credibility. *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

### ii. History of Minimal and Conservative Medical Treatment

In discounting Plaintiff's testimony, the ALJ discussed the fact that Plaintiff's medical treatment has not been extensive. The ALJ found that Plaintiff's failure to follow-up with a specialist who evaluated her in 2013 "strongly erodes her credibility, as it suggests her symptoms and limitations were not as severe as alleged." (A.R. 25). The ALJ noted that the record reflects that Plaintiff was receiving care for her lupus from a primary care provider rather than from a rheumatologist. (A.R. 25). An April 2013 medical record states that Plaintiff is "suffering from apparent lupus and is not currently under any long-term treatment, medication or plan for this disease." (A.R. 368).

At the administrative hearing, Plaintiff indicated that she has not been treated by a rheumatologist. (A.R. 59). In her Opening Brief, Plaintiff asserts that "[r]ecords document unsuccessful treatment by multiple rheumatologists." (Doc. 16 at 8). The record does not contain evidence to support this contention. For instance, Plaintiff's Opening Brief wrongly asserts that Plaintiff "submitted evidence from a rheumatologist, documenting 18/18 positive trigger points (Tr. 516)." (Doc. 16 at 8 n.5). The cited record is a "Fibromyalgia Questionnaire" signed by Plaintiff's primary care physician, whom Plaintiff implicitly concedes is not a rheumatologist. (Doc. 25 at 10).

Plaintiff's Reply seems to admit that the record does not contain evidence that Plaintiff was treated by a rheumatologist. Plaintiff states that "[a]lthough the rheumatology records are not in the Exhibit file, the record shows care was obtained. If the ALJ had doubt, he should have developed the record." (Doc. 25 at 3). However, at the administrative hearing, Plaintiff's attorney submitted treatment notes from a pain management doctor and stated that there are no other reports that need to be submitted. (A.R. 39). Plaintiff is ultimately responsible for providing the evidence to be used in making the RFC finding. *Andrews*, 53 F.3d at 1040 (a claimant bears the burden of proving entitlement to disability benefits); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (claimant carries burden to present "complete and detailed objective medical reports" of his or her condition from licensed medical professionals). Based on the

record, the Court does not find that the ALJ erred in concluding that Plaintiff was not receiving care from a rheumatologist.

As to Plaintiff's MRSA, the ALJ noted that treatment was conservative, abscesses were not continuous, and the condition did not require significant medical treatment. Although Plaintiff points to records showing that Plaintiff had multiple MRSA abscesses over the course of years (Doc. 25 at 4), the records do not indicate any work-related limitations resulting from MRSA. To reiterate, the mere existence of an impairment does not establish disability. *Matthews*, 10 F.3d at 680. Moreover, because the record does not contain any statements from Plaintiff's medical providers advising that Plaintiff avoid contact with individuals, the Court rejects Plaintiff's argument that the ALJ erred by not including such a limitation in the RFC assessment (Doc. 16 at 12). *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.").

In addition, the ALJ noted that Plaintiff only saw physician assistant ("PA") Katherine Leary on a monthly basis for medication refills and that Plaintiff was not routinely prescribed medication for treatment of MRSA or lupus. (A.R. 26). The ALJ also discussed a medical record indicating that Toradol was effective in controlling Plaintiff's pain associated with flare-ups. *See Warre v. Comm'r,* 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled with medication are not disabling for Social Security purposes); 20 C.F.R. § 404.1529(c)(3)(iv).

As another reason for discounting Plaintiff's testimony, the ALJ cited medical records in which treatment providers consistently observed that Plaintiff was in no acute distress and noted that during examinations with her treating providers, Plaintiff denied loss of strength, difficulty walking, weakness, or pain and physical examinations were

consistently within normal limits with occasional erythematous mass observed. (A.R. 25-26). The Court does not find that the ALJ mischaracterized those records by stating that they showed that Plaintiff had a "healthy and comfortable appearance." (A.R. 25). The ALJ is responsible for resolving ambiguities in the record and "is entitled to draw inferences 'logically flowing from the evidence.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Magallanes*, 881 F.2d at 750.

The Court finds that the ALJ's conclusion that Plaintiff has received minimal and conservative medical treatment is supported by substantial evidence in the record. Because an ALJ may infer that pain is not disabling if a claimant seeks only minimal, conservative treatment, the ALJ did not err in concluding that the "record tends to show that [Plaintiff's] allegations of being in 'constant pain' are not documented in the medical record." (A.R. 25). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008); *Parra*, 481 F.3d at 751 (noting "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); Social Security Ruling 96-7p, 1996 WL 374186, at *7 (July 2, 1996); *Burch*, 400 F.3d at 681 (finding that if claimant's complaints of back pain was "not severe enough to motivate [her] to seek" specialized treatment for her back (e.g. chiropractor visits, physical therapy, etc.), it "is powerful evidence regarding the extent to which she was in pain" even if the claimant did seek some treatment); *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (in weighing a claimant's credibility, an ALJ may consider unexplained or inadequately explained failure to seek treatment).

### iii. Plaintiff's Activities of Daily Living and the ALJ's Observations of Plaintiff During the Hearing

Plaintiff disputes the ALJ's finding that Plaintiff's activities of daily living are inconsistent with her testimony. The ALJ stated that Plaintiff's 2013 function report indicated that Plaintiff "was able to care for her children, care for her own personal hygiene/grooming needs, prepare meals, do household chores including dishes and vacuuming, ride in a vehicle, drive a vehicle, go out alone, shop outside the home, pay

bills and manage the finances, and follow instructions."[3] (A.R. 26). Although Plaintiff's function report was somewhat equivocal about how regularly she was able to perform her activities of daily living, the ALJ's interpretation was a reasonable one and is supported by substantial evidence. *See Rollins*, 261 F.3d at 857 ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it."); *Fair*, 885 F.2d at 604 (upholding the following rationale for discounting claimant's testimony: "If Fair's pain is not severe enough to motivate him to seek treatment or follow his doctor's advice, and if Fair remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that his pain prevents him from returning to his former job.").

Plaintiff also argues that the ALJ improperly gave "slight weight" to Plaintiff's "apparent lack of discomfort during the hearing" in finding Plaintiff's testimony not fully credible. (A.R. 28). This was a proper consideration. *See Orn*, 495 F.3d at 639 (an ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements").

### iv. The ALJ Provided Specific, Clear, and Convincing Reasons for Discrediting Plaintiff's Testimony

The ALJ's credibility finding in this case is unlike the brief and conclusory credibility findings that the Ninth Circuit Court of Appeals has deemed insufficient in

---

[3] The ALJ mistakenly stated that a medical record indicated that Plaintiff traveled to California, when in fact the record reported that Plaintiff's "mother in law has pancreatic CA." (A.R. 26, 446). Also, the medical record is from 2012, which is prior to Plaintiff's amended alleged disability onset date.  However, the ALJ's error is inconsequential to the decision as the ALJ provided other clear and convincing reasons for discounting Plaintiff's testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding harmless error where "two of the ALJ's [four] reasons supporting his adverse credibility finding [were] invalid"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004) (finding any error in one of the ALJ's reasons for discrediting claimant was harmless as the ALJ provided other valid reasons).

other cases. *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible. The ALJ thoroughly discussed the evidence and explained the inconsistencies in the record that he found discredited Plaintiff's testimony. It is possible that a different ALJ would find Plaintiff's symptom testimony credible. But it is not the Court's role to second-guess an ALJ's decision to disbelieve a Plaintiff's allegations. *Fair*, 885 F.2d at 603 ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Morgan*, 169 F.3d at 599. The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record. The Court therefore finds that the ALJ did not err in discrediting Plaintiff's subjective testimony.

### 2. The ALJ Did Not Improperly Weigh the Opinions of Treating Providers

#### i. Assessments Provided by Physician Assistant Katherine Leary

A source that is not an acceptable medical source is considered to be an "other source." 20 C.F.R. 404.1513(d). "Other sources" include physician assistants, nurse practitioners, and lay witnesses. 20 C.F.R. § 404.1513. Information from these "other sources" must still be considered even though the information cannot establish the existence of a medically determinable impairment. *Id.* An other source's opinion can be rejected as long as the ALJ provides "germane" reasons, such as finding that the opinion is inconsistent with medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Plaintiff has submitted records from Forty Third Medical Associates, where Plaintiff was treated by PA Leary. In two medical assessments completed in 2013, Ms.

Leary opined that Plaintiff had a number of limitations that would preclude her from performing full-time work. (A.R. 310-11; 513-14). The ALJ gave little weight to Ms. Leary's opinions for the following valid reasons:

1. The ALJ found that Ms. Leary's opinions are "generally without support from the treatment notes . . . . There are no objective findings to support such extreme limitations either . . . ." (A.R. 27). The ALJ cited exhibits containing records showing that physical examinations of Plaintiff were within normal limits. (*Id.*).[4] After reviewing the record, the Court finds that the ALJ's conclusion that Ms. Leary's opinions are generally without support from the treatment notes is supported by substantial evidence and is a germane reason for discounting the opinions. *Bayliss*, 427 F.3d at 1218; *see also Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may properly reject a treating doctor's opinion that a claimant cannot work that is "unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions").

2. The ALJ found that Ms. Leary's opinions "seem to rely quite heavily on [Plaintiff's] subjective complaints." (A.R. 27). Plaintiff objects to this conclusion. However, Ms. Leary's medical assessments do not explain the bases for her opinions. Notes from Ms. Leary's physical examinations of Plaintiff are sparse. It is well-settled that an ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *See Tommasetti*, 533 F.3d at 1041; *Morgan,* 169 F.3d at 601; *see also Tonapetyan,* 242 F.3d at 1149. Based on the record, the ALJ's conclusion that Ms.

---

[4] Plaintiff observes that the ALJ's decision does not use "pin point" citations when referring to the exhibits. (Doc. 25 at 5). The Court finds that the ALJ's use of general citations in this case are sufficiently specific to allow the Court to decipher the ALJ's reasoning. A reviewing court may draw specific and legitimate inferences from an ALJ's decision. *Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

Leary's opinions are largely premised on Plaintiff's subjective complaints is not unreasonable and is a germane reason for giving the opinion little weight. As explained previously, the ALJ did not improperly discount Plaintiff's testimony.

### ii. Fibromyalgia Questionnaire Signed by J.L. Beach, DO and PA Leary

On April 30, 2014, Ms. Leary and J.L. Beach, D.O. jointly signed a "Fibromyalgia Questionnaire" indicating that in an eight-hour workday, Plaintiff could sit for two hours, stand/walk for less than two hours, and lift/carry more than ten pounds, but less than fifteen pounds. (A.R. 516-19). Because it does not affect the outcome, the Court will deem Dr. Beach a treating physician as Plaintiff asserts.[5] (Doc. 16 at 23). Dr. Beach's opinions are contradicted by the opinions of Monte Jones, M.D., who conducted an independent examination of Plaintiff on October 31, 2013. (A.R. 482-85). Accordingly, the ALJ must have provided specific and legitimate reasons for giving Dr. Beach's opinion little weight.[6] *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

The ALJ noted that the limitations opined in the Fibromyalgia Questionnaire are more limiting than Plaintiff's admitted abilities. (A.R. 27). Substantial evidence in the record supports this finding. For instance, the Fibromyalgia Questionnaire stated that Plaintiff needed to change positions every twenty-one to forty-five minutes, while Plaintiff indicated that she could stand or walk for up to one hour and sit for one to two

---

[5] The ALJ found that "it is clear that Dr. Beach did not establish a treating relationship with [Plaintiff], rather the majority of care was performed by Ms. Leary." This is not an unreasonable conclusion based on the record. Moreover, the duration of a physician's treating relationship with a claimant is a valid factor in weighing the physician's opinion. *See Holohan v. Massanari,* 246 F.3d 1195, 1202–03, 1205 (9th Cir. 2001) (an ALJ is required to take into consideration multiple factors, including the length and extent of the treatment relationship, when determining how much weight to give the opinion). Further, any error in the ALJ's finding is harmless as the ALJ provided specific and legitimate reasons for rejecting Dr. Beach's opinions.

[6] Plaintiff's Opening Brief appears to concede that the specific and legitimate test applies. (Doc. 16 at 23).

hours.[7] (A.R. 218, 518). The discrepancies between the Fibromyalgia Questionnaire and Plaintiff's own statements concerning her limitations is a specific and legitimate reason for giving little weight to the Fibromyalgia Questionnaire. *See Rollins*, 261 F.3d at 856 (upholding ALJ's rejection of treating physician's report because "[claimant] has never claimed to have any problems with many of the conditions and activities that [the doctor] instructed [claimant] to avoid"); *Rushing v. Astrue*, 360 F. App'x 781, 782 (9th Cir. 2009) (ALJ properly rejected medical opinions offered by claimant's doctors where the opinions were inconsistent with claimant's testimony regarding her inability to engage in ordinary physical activity, such as walking without discomfort); *see also* 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

In addition, the ALJ found that "as a primary care physician, Dr. Beach's opinion appears to rest at least in part on an assessment of an impairment (fibromyalgia) outside his own area of expertise." (A.R. 27). It was proper for the ALJ to consider whether Dr. Beach was a specialist when weighing his opinion. *See Smolen*, 80 F.3d at 1285 (the opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a non-specialist) (citing 20 C.F.R. § 404.1527(d)(5)).

Finally, the ALJ discounted the Fibromyalgia Questionnaire because it was contradicted by the non-examining State agency physician's opinions. (A.R. 27). On November 8, 2013, in conjunction with Plaintiff's request for reconsideration of the

---

[7] This statement is contained in Exhibit 17E, but the ALJ cited only to Exhibit 18E. Any error by the ALJ in failing to more specifically explain his reasons for concluding that the Fibromyalgia Questionnaire is inconsistent with Plaintiff's stated limitations is harmless as the ALJ provided other valid reasons for discounting the Fibromyalgia Questionnaire.

initial denial of her claim, State agency physician Bill Payne, M.D. reviewed Plaintiff's medical records and completed a RFC assessment. (A.R. 87-91). Dr. Payne opined that Plaintiff impairments would not prevent her from performing light work with some postural limitations. (A.R. 89). The ALJ gave great weight to Dr. Payne's opinions "based on their consistency with the greater objective medical evidence of record . . . ." (A.R. 26).

Plaintiff argues that the ALJ erred by not detailing the reasons for finding that Dr. Payne's opinions are consistent with the record. But by reading the ALJ's decision as a whole, the Court is able to infer the reasons why the ALJ found Dr. Payne's opinions consistent with the record. In his decision, the ALJ (i) explained that the record lacks objective evidence showing that Plaintiff's impairments are disabling; (ii) provided clear and convincing reasons for discrediting Plaintiff's testimony; and (iii) provided germane reasons for discounting PA Leary's assessments, which contained the same type of limitations as opined in the Fibromyalgia Questionnaire. Since the ALJ thoroughly explained his reasons for rejecting the evidence that conflicted with Dr. Payne's opinions, it was not necessary for the ALJ to further explain how Dr. Payne's opinions are consistent with the record. The Court does not find that the ALJ improperly concluded that Dr. Payne's opinions are consistent with the record, and the ALJ did not err by giving significant weight to those opinions on that basis. (A.R. 26). Therefore, Dr. Payne's opinions serve as substantial evidence supporting the ALJ's decision to reject the Fibromyalgia Questionnaire. *See Tonapetyan*, 242 F.3d at 1149.

As the ALJ's reasons for rejecting the opinions expressed in the Fibromyalgia Questionnaire are specific, legitimate, and are supported by substantial evidence, the Court finds that the ALJ did not improperly discount the opinions.

### iii.  Records from Godwin Izuegbunam, M.D.

Plaintiff submitted to the ALJ treatment records dated May 23, 2012 through May 6, 2013 from pain management doctor Dr. Godwin Izuegbunam, M.D. (A.R. 538-48). Plaintiff argues that the ALJ erred by not discussing those records in his decision. (Doc.

16 at 9). However, an ALJ "need not discuss *all* evidence presented to [him or] her" if the evidence ignored is "neither significant nor probative." *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984); *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Medical evidence that predates a claimed period of disability is generally not probative evidence. *See Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985) ("In light of the prior determination that [claimant] was not disabled as of January 19, 1979, medical reports based on observations made prior to January 20, 1979, are irrelevant."); *Osmore v. Astrue*, 472 F. App'x 529, 532 (9th Cir. 2012) (explaining that "out-of -date" evidence from before the date of the pending disability application is not probative evidence of that later alleged disability status).

Here, almost all of Dr. Izuegbunam's records predate Plaintiff's amended alleged disability onset date of February 1, 2013. The records after Plaintiff's alleged disability onset date merely reflect that Plaintiff is on opiate pain medication, which the ALJ's decision acknowledges. (A.R. 26). Dr. Izuegbunam's records are not significant or probative, and the ALJ did not commit harmful error by failing to discuss them in his decision.

### III.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is free from reversible error. Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security. The Clerk of Court shall enter judgment accordingly.

Dated this 21st day of July, 2016.

_____
Eileen S. Willett
United States Magistrate Judge